# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**RANDY J. LEDUC,**

        **Plaintiff,**

  **-vs-**                                  **Case No.  6:07-cv-1272-Orl-28GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

Plaintiff Randy LeDuc ["LeDuc"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for disability insurance benefits. *See* Doc. No. 1 ("Complaint"). LeDuc claims disability beginning August 3, 2003. R. 54.   For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED**.

## I.     BACKGROUND

LeDuc was born April 22, 1962 (R. 54, 424), and he was 41 years of age on his alleged onset date of disability.  R. 54.  LeDuc completed the ninth grade in high school. R. 441.  He was not in special education classes (R. 81), he never received his GED, but LeDuc obtained other vocational and technical training and was in the military (R. 427).  LeDuc's past relevant work includes cooking pizza at Sorrento's Delicatessen from 1984 until 1988 (R. 107A), working as a

sales and manufacturing coordinator at Florida Production Engineering from 1988 until 1998 (R. 67, 78, 107A, 428 - 429), and delivering flowers for Flamingo Florist from 2000 until 2003 (R. 67, 78, 107A).

Bruce Kennedy, M.D., treated LeDuc from 1992 until June 20, 2004.  R. 156-211.  The record indicates a gap in treatment from 1997 to 2002. R. 162-63.  On August 1, 2003, LeDuc visited Dr. Kennedy regarding an ulcer on his right leg, and Dr. Kennedy prescribed him Silvadene and Darvocet. R. 162.[1]  On August 29, 2003, LeDuc left a message for Dr. Kennedy that the Darvocet was not strong enough, but Dr. Kennedy indicated that LeDuc could only get Darvocet #24, nothing stronger.  R. 161.  On September 2, 2003, Dr. Kennedy indicated that LeDuc's ulcer was looking better. *Id.*  LeDuc stated that he preferred conservative treatment as opposed to surgery.  *Id.*  Dr. Kennedy prescribed the Silvadene and Darvocet at the end of this visit.  *Id.*  On September 12, 2003, Dr. Kennedy signed a letter typed by LeDuc which stated "Randy j. LeDuc is available and able to work."  Doc. No. 160.  A note on the letter indicates that LeDuc wanted the letter signed so the unemployment office would issue his paycheck.  *Id.* On September 23, 2003, he approved LeDuc's request for a refill of the Darvocet.  Doc. No. 161.

On October 16, 2003 and January 29, 2004, LeDuc cancelled his appointments with Dr. Kennedy and it appears no visits occurred in the interim. R. 159.  On February 4, 2004, after examining LeDuc, Dr. Kennedy noted poor compliance with the prescribed compressive treatment. *Id.*  Dr. Kennedy prescribed a Jobst knee high stocking for LeDuc's right leg.  R. 158. On April 21, 2004, Dr. Kennedy noted that LeDuc's ulcer was worse and prescribed Augmentin and Silvadene.  R. 157.  He also indicated the following:  "? Compliance."  *Id.*  On May 17,

---

[1] Dr. Kennedy performed skin grafts in 1994 and 1995 on LeDuc's right leg for similar ulcers. R. 125, 215.

2008, Dr. Kennedy discussed obtaining a second opinion from a vascular surgeon.  R. 157.  On June 30, 2004, LeDuc cancelled his appointment.  R. 156.

On May 4, 2004, LeDuc was examined by Michael E. Townsend, M.D. R. 155-155A. Dr. Townsend noted that LeDuc was a 42 year old male with fatigue and weight gain. R. 155A. LeDuc was informed that he was glucose intolerant, and he had chronic stasis changes with a right lower extremity leg ulcer with some chronic pain.  *Id.*  Dr. Townsend prescribed LeDuc Lortab with no refills.  LeDuc was told to continue with the Silvadene cream per Dr. Kennedy's previous prescription.  *Id.*  Dr. Townsend also reported that LeDuc showed no signs of depression. R. 155.

On May 13, 2004, after examining LeDuc, Dr. Townsend noted chronic leg ulcers, right lower extremity with chronic pain.  R. 154.  On that same day, May 13, 2004, LeDuc filed a claim for disability insurance benefits, claiming disability as of August 3, 2003.  R. 14.  On May 21, 2008, Dr. Townsend doubled the dosage of LeDuc's prescription for Lortab noting that LeDuc complained the medicine was ineffective.  R. 153.  Dr. Townsend also placed LeDuc on Augmentin.  *Id.*  Dr. Townsend suggested making an appointment with the Florida Hospital-Ormond Memorial Wound Care Center ("Wound Care Center"), and LeDuc declined.  *Id.* However, on June 9, 2004, LeDuc went to the Wound Care Center.  R. 215.  Lisa Farrar, DPM, made the following assessment:

1.    Chronic venous insufficiency with a full thickness venous stasis ulceration present to the anterior aspect of the right lower extremity.

2.    Obesity.

3.    History of chronic back problems.

R. 216. She prescribed a serial of debridements to be performed at the Wound Care Center. *Id.*

Dr. Farrar indicated the following:

> Various treatment options were recommended for this patient including
> topical enzymatic debridements, compression of the lower extremities
> stating that his Jobst compression stocking is in perfect condition and can
> take care of the wound himself. The patient states that he knows this wound
> better than the experienced doctors here at the facility and in my opinion I
> feel that this patient is not an actual candidate for disability, nor do I
> recommend follow-up treatments if he is not going to accept our
> recommendations for treating the wound. If the attitude does not change on
> the patient's next visit, he will be discharged at this time.

R. 217. On June 11, 2004, LeDuc reported to Dr. Townsend that he visited the Wound Care

Center and had debriding. R. 152. He stated he had significant pain from this treatment but the

pain was "starting to quiet down some" and he was pleased with the care. *Id.* Dr. Townsend

indicated that LeDuc had some osteoarthritis/degenerative disc changes in his spine with some

back pain. *Id.*

On August 11, 2004, Dr. Farrar reported that disability was not appropriate for LeDuc,

stating the following:

> It is in my personal opinion from this patient's [sic] social history of
> noncompliance and irritability and not following through with any of the
> recommendations, that he is not a candidate for a disability. He has come
> into the office on both legs despite the recommendations to use compression
> for his problems, or even follow through with pain management or even
> follow through with Dr. Halaby for a SEPS [Subfacial Endoscopic
> Perforator Surgery ("SEPS")] procedure, which would help reduce his
> recurring open wounds to his legs. The patient has canceled his
> appointments on multiple occasions and has basically come into [the
> Wound Care Center] for pain medications as well as general treatment for
> his open wound. The patient has changed his wound care orders on his own
> recommendations and is basically using this facility for his pain control . . .
> It is, again, the patient's noncompliance due to all of the other measures that
> keeps his wounds from completely healing.

R. 214.  On August 12, 2004, after examining LeDuc, Stephen Levine, M.D. made the following assessment:  "Chronic venous stasis in an overweight 42-year-old man, with stasis ulceration which is recurrent."  R. 212.  He recommended SEPS as long-term treatment. *Id.*

On June 3, 2004, LeDuc was examined by John A. Ortolani, M.D. R. 220-21.  Dr. Ortolani indicates that LeDuc slipped and fell on September 9, 2002, landing on his left arm and left hip.  R. 220.[2]  Dr. Ortolani noted that there is paracervical muscle tenderness and spasms, paralumbar muscle tenderness and spasms with pain to some degree over the sciatic nerve, and straight leg raising is negative bilaterally.  *Id.*  He made the following assessments: cervical strain syndrome and lumbosacral strain syndrome.  *Id.*  Dr. Ortolani stated that there was no treatment to offer at that time and would re-evaluate LeDuc in one month to see how he was doing.  R. 221.  On July 12, 2004, Dr. Ortolani indicated that LeDuc ws still experiencing moderate problems with pain in his neck, shoulder and low back.  R. 219.  Dr. Ortolani ordered MRI scans of the cervical spine and left shoulder and stated he would re-evaluate him in one month.  *Id.*  On August 24, 2004, Dr. Ortolani noted that the MRI shows inflammation and edema, he has a herniated disc in his neck and he has a bulging disc at L4-5 in his low back.  R. 218.  He stated the following:

> Overall this amounts to a 3% impairment to the left shoulder, a 7% impairment to the cervical spine, and a 2% impairment to the low back, giving him a 12% impairment of the body as a whole related to the accident of 9/9/2002.

*Id.*  He prescribed LeDuc 7.5 mg of Lortab twice a day and 20 mg of Bextra once a day and stated he would re-evaluate him in three months or as needed.  *Id.*

---

[2] There are various medical records regarding an alleged back injury during this slip and fall incident.  R. 257-281. LeDuc was prescribed physical therapy and pain medications, such as Lortab and Soma.  On October 14, 2002, a telephone message indicates that LeDuc's MRI results were "practically normal." R. 157.

On September 20, 2004, a state agency physician completed a RFC assessment and indicated the following:

1. LeDuc could occasionally lift and/or carry a maximum of 20 pounds and 10 pounds frequently;

2. LeDuc could stand and/or walk about 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; and push and/or pull unlimited.

R. 223.   The state agency physician noted that the venous stasis ulcers should have shown improvement if LeDuc was compliant with the prescribed therapy.   *Id.*   He also stated that LeDuc's allegations were partially credible. R. 227.

On February 1, 2005, LeDuc underwent a consultative examination with David W. Carpenter, M.D.   R. 230-236.   Dr. Carpenter noted that LeDuc's main complaint was that of chronic low back pain. R. 230.   An x-ray of the lumbosacral spine indicated "good anatomical alignment of the vertebral bodies.  Disk spacing is preserved throughout.  There is a slight loss of lordotic curvature with slight left-to-right scoliosis.  No acute injury is identified." R. 232.   Dr. Carpenter made the following impressions:  morbid obesity, cervical disk disease, lumbar disk disease, chronic neck pain, chronic law back pain, chronic left shoulder pain, and status post bilateral carpal tunnel release surgery.  *Id.*  Dr. Carpenter noted the following:

> The claimant has no motor or sensory deficits by physical examination. The claimant ambulates in normal heel to toe fashion.  He is steady without assistance.  His balance is good.  Grip strength and fine manipulation skills are within normal limits at both upper extremities.  The claimant would benefit from weight loss.   The claimant has evidence of venous insufficiency bilaterally with lower extremity edema and venous varicosities.  Distal lower extremity pulses are decreased which is likely secondary to his morbid obesity rather than peripheral arterial disease.

*Id.*  On February 27, 2005, a state agency physician completed a second RFC assessment.  R. 237-44.  The physician made the following assessments:

1.     LeDuc could occasionally lift and/or carry a maximum of 20 pounds and 10 pounds frequently;

2.     LeDuc could stand and/or walk about 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; and push and/or pull unlimited.

3.     LeDuc could balance, kneel, or crawl frequently and climb, stoop, or crouch occasionally.

R. 238.  The physician noted that LeDuc was not currently under any treatment and was not taking any pain medications, which was inconsistent with his alleged severity of pain.  R. 242. The physician also noted that the cervical and lumbar strains were not severe and there was no evidence of recurrent carpal tunnel syndrome.  *Id.*

On June 27, 2005, LeDuc was admitted to the Memorial Hospital Ormond complaining of severe back pain. R. 245-56.  LeDuc was prescribed Flexeril, Lortab and Prednisone for a sprained back and was directed to follow-up with Albert Gillespy, M.D. R. 251, 255.

On November 29, 2005, the Honorable Gerald F. Murray, Administrative Law Judge ["ALJ"] held a hearing on LeDuc's claim in Daytona Beach, Florida.  R. 421-446.  Attorney Michael Shiffman represented LeDuc at the hearing.  R. 421.  LeDuc and Vocational Expert Cynthia Patterson ("VE") were the only people to testify.  *Id.*  On April 28, 2006, the ALJ issued a decision that LeDuc was <u>not disabled</u> finding the following:

1.     [LeDuc] has the following severe impairments: chronic venous insufficiency and venous ulcers, obesity, and cervical and lumbar strain. R. 16.

2.     [LeDuc] does not have any medically determinable mental impairment. R. 17.

3.     [LeDuc] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 17-19.

4.      [LeDuc] has the residual functional capacity ["RFC"] to perform light work with a sit-stand option and able to change positions, and occasional walking. R. 17.

5.      [LeDuc]'s statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. R. 19.

6.      [LeDuc] is unable to perform any past relevant work. R. 17, 19-20.

7.      Considering [LeDuc]'s age, education, work experience, and [RFC], there are jobs that exist in significant number in the national economy that [LeDuc] can perform. R. 20.

LeDuc requested review by the Appeals Council and submitted additional medical records. R. 5-8.  On January 13, 2006, LeDuc was admitted to the Florida Hospital Ormond Memorial for right should pain.  R. 296-306.  The physician opined LeDuc sprained his shoulder but noted "there are no factures, subluxations, or signs of degenerative arthritis.  Similarly, there are no soft tissue calcifications." R. 306.  However, LeDuc was prescribed Lortab and Flexeril. R. 299, 303.  On February 8, 2006, LeDuc returned to Florida Hospital Ormond Memorial complaining of a toothache. R. 307-316.  On May 5, 2006, LeDuc visited the Florida Hospital Ormond Memorial for neck spasms and was prescribed Darvocet and Flexeril. R. 317-326.  He returned on May 9, 2006, complaining that he could not eat, he had lower back pain, and he had heart palpitations. R. 327-349.

On May 19, 2006, LeDuc was admitted to the Bert Fish Medical Center complaining of severe stomach pain. R. 376-389.  It appears LeDuc was prescribed Percocet but the lab results show no significant findings. R. 384, 386-87.  For instance, John Hugh, M.D. noted the computed tomography ("CT") scans of LeDuc's pelvis and abdomen were normal. R. 386-87.  On June 14, 2006, LeDuc returned to Bert Fish Medical Center complaining of severe back pain.

R. 364-375.   However, limited imaging of the lumbar spine revealed no acute fracture or subluxation.   R. 375.   After examining LeDuc, the nurse noted the following:

> During attempt to discharge [LeDuc] refused Norflex and Motrin stated [sic] he had taken [over the counter] meds and it didn't work, insisted on seeing a doctor, angry about not receiving an x-ray – explained that the doctors we're [sic] busy . . . and it would be a wait.

R. 367.   A note from the physician also indicates that LeDuc "refused to take the [prescriptions] from the [nurse] [and] walked out." R. 370.

On August 11, 2006, LeDuc returned to Florida Hospital Ormond Memorial complaining of back problems. R. 350-361.   He was prescribed Robaxin and Lortab and the physician indicated he was out of work until August 17, 2006.   R. 357, 361.

From September 28, 2006 to November 7, 2006, LeDuc was examined at the Volusia Hand Surgery Clinic, P.A. by Tamara Ray Clancy, M.D. and had "left small finger tendon repair."   R. 391-397, 396.   On November 7, 2006, Dr. Clancy noted that LeDuc's wound was "well healed" but she also stated that he should not do any heavy lifting, gripping or strengthening at that point in time.   R. 391.

Harrish Kher, M.D., a psychiatrist, treated LeDuc for depression from July 10, 1998 until September 30, 1999. R. 400-419.[3]   On October 26, 2006, LeDuc visited Dr. Kher again. R. 399. Dr. Kher diagnosed LeDuc with "Major Depressive Disorder-mild" and prescribed LeDuc Prozac, Xanax and Restoril.   R. 399.

On June 6, 2007, the Appeals Council denied review after reviewing additional evidence. R 4-8.   On August 10, 2007, LeDuc timely appealed the Appeals Council's decision to the

---

[3] On June 18, 2004, when asked whether he had been seen "by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit [his] ability to work[,]" LeDuc answered "No" on the Disability Report.  R. 79.

United States District Court.  *See* Complaint, Doc. No. 1.  On November 21, 2007, LeDuc filed a memorandum of law in support of his appeal.  Doc. No. 12.  On February 1, 2008, the Commissioner filed a memorandum in support of his decision that LeDuc was not disabled. Doc. No. 15.  The appeal is ripe for determination.

## II.     THE PARTIES' POSITIONS

LeDuc assigns three errors to the ALJ.  First, LeDuc claims that the ALJ failed to ask the VE about any possible conflicts between her testimony concerning the requirements of a job or occupation and the information provided in the *Dictionary of Occupation Titles* ("*DOT*"), as required by Social Security Ruling ("SSR") 00-4p.  Second, LeDuc claims the ALJ failed to make specific findings concerning LeDuc's non-exertional limitations.  Third, LeDuc argues that the ALJ's finding that there are jobs that exist in significant numbers in the national economy that LeDuc can perform is not supported by substantial evidence and was appropriate given functional limitation the ALJ actually found to exist.

The Commissioner argues that there is no conflict between the VE's testimony and the *DOT* and, therefore, the ALJ had no duty to inquire under SSR 00-4p.  The Commissioner also argues that the ALJ was not required to find LeDuc had additional non-exertional impairments. Finally, the Commissioner contends that the ALJ's hypothetical question is supported by substantial evidence.

## III.    LEGAL STANDARDS

### A.     THE ALJ'S FIVE STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basis work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently

severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first

12

determine the claimant's residual functional capacity ("RFC"). 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the clamant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work

considering his RFC, age, education and work experience.   In determining the physical

exertional requirements of work available in the national economy, jobs are classified as

sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able

to do other work, he is not disabled.   If the claimant is not able to do other work and his

impairment meets the duration requirement, he is disabled.   Although the claimant generally

continues to have the burden of proving disability at this step, a limited burden of going forward

with the evidence shifts to the Social Security Administration.  In order to support a finding that

an individual is not disabled at this step, the Social Security Administration is responsible for

providing evidence that demonstrates that other work exists in significant numbers in the

national economy that the claimant can do, given the RFC, age, education and work experience.

20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

## B.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[4]   In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material —  relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is

---

[4] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at

1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d

1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v.*

*Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand

may be warranted even in the absence of an error by the Commissioner if new, material evidence

becomes available to the claimant.[5]  *Jackson*, 99 F.3d at 1095.

## IV.    WHETHER THE ALJ ERRED BY FAILING TO ASK THE VE ABOUT ANY POSSIBLE CONFLICTS BETWEEN HER TESTIMONY AND THE INFORMATION PROVIDED IN THE DOT

LeDuc argues that the ALJ erred by failing to ask the VE whether his testimony

conflicted with the *DOT* as required by SSR 00-4p.  Doc. No. 12 at 6.  LeDuc maintains that

pursuant to *Leonard v. Astrue*, 487 F.Supp.2d 1333, 1339 (M.D. Fla. 2007), "an ALJ has an

affirmative duty to inquire about any conflicts between the vocational expert's testimony and the

*DOT*."  *Id.*  In response, the Commissioner argues that *Leonard* is distinguishable from the

present case due to the following:

> In *Leonard*, the plaintiff clearly identified internal conflicts in the VE's
> testimony as well as conflicts between the VE's testimony and the *DOT*.  In
> the present case, Plaintiff simply points out that the ALJ did not ask the VE
> whether there were any conflicts between his testimony and the *DOT*.

Doc. No. 15 at 5 (emphasis added).  Thus, the Commissioner argues that the ALJ did not commit

any error because the record fails to reflect an actual conflict between the VE's testimony and the

*DOT*.

---

[5] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id*.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

SSR 00-4P provides in pertinent part:

> In particular, this ruling emphasizes that before relying on VE or VS evidence to support a disability determination or decision, <u>our adjudicators must</u>:
> - <u>Identify</u> and obtain a reasonable explanation for <u>any conflicts</u> between occupational evidence provided by VEs or VSs and information in the [*DOT*] . . ., and
> - Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p (2000) (emphasis added). The Eleventh Circuit has not addressed the requirements of SSR 00-4p. In *Leonard*, the Court held that "pursuant to SSR 00-4p, when a conflict exists between a VE's testimony and the *DOT*, an ALJ must elicit a reasonable explanation for the conflict and his or her failure to do so can constitute reversible error." *Leonard*, 487 F.Supp.2d at 1339.  SSR 00-4p provides additional clarification regarding the ALJ's responsibility to inquire about conflicts:

> When a VE or VS provides evidence about the requirements of a job or occupation, <u>the adjudicator has an affirmative responsibility to ask about any possible conflict</u> between that VE or VS evidence and information provided in the *DOT*.  In these situations, the adjudicator will:
> - <u>Ask the VE or VS if the evidence he or she has provide conflicts with information provided in the *DOT*</u>; and
> - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.* (emphasis added).[6]    Thus, the SSR makes clear that the ALJ has an affirmative duty to inquire about whether a conflict exists between the testimony provided and the *DOT*.[7]  Because the ALJ failed to comply with that requirement, the record below is incomplete.  Accordingly, the Court recommends that the Commissioner's decision be **REVERSED AND REMANDED**.

---

[6] *See* http://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.
[7] "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Social Security Administration.'" *Leonard*, 487 F.Supp.2d at 1339 (*quoting Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9 (1990)).

Because the Court recommends that this case be remanded for further consideration, it is unnecessary to address the parties' arguments addressing whether the ALJ failed to make specific findings concerning LeDuc's non-exertional limitations and whether the ALJ's finding that there are jobs that exist in significant numbers in the national economy that LeDuc can perform is supported by substantial evidence.

## VI.    CONCLUSION

For the reasons stated above, it is recommended that the decision of the Commissioner be **REVERSED AND REMANDED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 12, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

The Honorable John Antoon II
United States District Judge

Richard A. Culbertson
Law Office of Richard A. Culbertson
Suite E
3222 Corrine Drive
Orlando, Florida        32803

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Gerald F. Murray
c/o Social Security Administration
Office of Hearings and Appeals
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, Florida   32256-1224